**In re Cecil McCOLLUM, Jr., Linda Ruth McCollum, Debtors.**

**Bankruptcy No. 384–04105–H13.**

United States Bankruptcy Court, D. Oregon.

Aug. 13, 1987.

---

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter arises from a Motion for Relief From Automatic Stay and an Objection to Proposed Amended Plan, both filed by Commonwealth Mortgage Company (Commonwealth). The creditor appeared by Stephanie Striffler and the debtors appeared by Kent Snyder.

The debtors' Chapter 13 plan of December 7, 1984 provided for monthly payments directly to Commonwealth, rather than

through the trustee, upon a claim secured only by the debtors' principal residence. After confirmation of the plan, one of the debtors became unemployed causing the debtors to miss nine payments. Commonwealth then filed its Motion for Relief from Automatic Stay. Thereafter, the debtors filed an amended plan dated May 5, 1987 which proposed that the debtors, through the trustee, pay Commonwealth $254 per month (the monthly payment required by the trust deed) and $135 per month to cure the postpetition arrearages.

## RELIEF FROM STAY

■ Commonwealth claims entitlement to relief from stay because its interest is not adequately protected. In its motion, Commonwealth asserted that the balance due was $16,111.59 and that the commercially reasonable value of the property does not exceed $30,000. These sums show an equity cushion in the property of approximately $14,000 which adequately protects the creditor's interest. Further protection is offered by the monthly payments contemplated by the proposed amended plan.

■ Despite being adequately protected, Commonwealth appears to argue that the failure to make a regular mortgage payment when due is, in itself, "cause" for relief from stay under 11 U.S.C. § 362(d)(1). To support that proposition the creditor cites only one case, *In re Ellis*, 60 B.R. 432 (9th Cir. BAP 1985). *Ellis* holds that failure to make payments after confirmation *may* constitute "cause" for relief from stay even though the creditor is adequately protected. *Ellis* does not hold that every default will constitute cause.

If Commonwealth's argument were followed to its logical conclusion, then any time a debtor was one day late in making a monthly payment the creditor would be entitled to relief from stay and foreclosure regardless of the size of the debtor's equity and whether or not the creditor would suffer any economic loss should the stay be continued. Such a result does violence to the legislative scheme of Chapter 13 which contemplates restructuring of debt in order to accomplish financial rehabilitation of the debtor.

■ A bankruptcy reorganization is focused primarily upon economic concerns. There can be circumstances when relief from stay is appropriate even though the creditor is adequately protected. "Cause" may exist when there is litigation pending in another court and factors such as the costs to litigants and judicial economy dictate that the issues be determined by that court rather than the bankruptcy court. However, when a creditor is adequately protected by a large equity cushion and the debtor could suffer a substantial loss in the event of foreclosure, it does not appear that relief from stay should automatically follow a default in payment.

■ A postpetition default may, or may not, constitute "cause" for relief from stay. In circumstances where, as in this case, no economic or other harm to the creditor would result, it is appropriate that the stay continue in effect.

## OBJECTION TO PROPOSED AMENDED PLAN

Commonwealth objects to the proposed plan, contending that where a creditor is secured solely by a debtor's residence, 11 U.S.C. § 1322(b)(2) prohibits curing of postpetition defaults. That subsection provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...."

The creditor submits that the curing of post-confirmation defaults would constitute a modification of Commonwealth's rights, citing *In re Gavia*, 24 B.R. 573, 575 (9th Cir.1982). That case holds that

"a plan that proposes the withholding of monthly installments due on the obligation for any period of time modifies the rights of the affected creditors in violation of 11 U.S.C. Section 1322(b)(2)."

The debtors' amended plan in the present case does not propose to withhold future payments. It proposes to make payments as they become due in the future as well as

make monthly payments to cure defaults which have occurred prior to approval of the amended plan.

One recent case which has not been cited by either party is *In re Nicholson,* 70 B.R. 797, 15 B.C.D. 797 (Bankr.Colo.1987). That case also involved a claim secured solely by a security interest in the debtor's principal residence. After confirmation, the debtor failed to make certain payments to the creditor, who commenced foreclosure proceedings without seeking relief from stay. The debtor claimed that the foreclosure proceedings were stayed, and offered to cure the postpetition defaults. The court, in dicta [1], stated that "to allow the debtor to provide adequate protection in this manner is squarely contrary to the provisions of 11 U.S.C. Sec. 1322(b)(2) and (5) since it would modify the rights of the creditor contrary to those provisions. Upon an analysis of the relevant Code sections, this court disagrees with the *Nicholson* conclusion.

The starting point for the analysis is the goal of chapter 13 to rehabilitate the debtor while protecting the creditor's interests. To further that goal, § 1329 provides for modification of a plan after confirmation to take into account changed circumstances. *See* 11 U.S.C. 1329(a). The determination of whether the proposed modification should be approved is based upon the circumstances existing at the time of the proposed modification. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 431 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Section 1329(b) requires that a modified plan meet the requirements of §§ 1322(a), (b) and (c) and § 1325(a).

■ Under § 1322(b)(5) a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending * * *." It could be argued that § 1322(b)(5) applies only to prepetition defaults. However, the statute is not specifically limited to prepetition defaults and in fact provides for curing of "any defaults."

■ Nor does the inclusion of such a provision curing postconfirmation defaults to claims "provided for by the plan." Under *Nicholson,* if the plan "provided" for the first mortgage but made no provision for the second mortgage, upon confirmation the lien of the second mortgage would have priority over the "new" lien of the first mortgage.

The mere fact that upon confirmation a chapter 13 plan becomes binding on both the debtor and the creditors does not require a conclusion that upon confirmation the prepetition debts are extinguished and new debts are created. If the debtor completes the plan any balance owing upon the prepetition debts will be discharged under § 1328(a). If the case is dismissed or converted to chapter 7 prior to completion of the plan, the prepetition debts remain unaffected except to the extent that payments have been received.

Section 1325(a)(5)(B) provides further support for the proposition that no debts are extinguished or created by a chapter 13 confirmation. Section 1325(a)(5)(B) requires that unless the holder of a secured claim accepts the plan or the debtor surrenders the property to the creditor, the plan cannot be confirmed unless "the plan provides that the holder of such claim retain the lien securing such claim." The word "retain" imports a lien then in existence, not a lien to be created upon confirmation.

For the above reasons this court disagrees with the holding of *Nicholson* that the stay provided by § 362 expires upon confirmation of a chapter 13 plan.

1. The issue before the *Nicholson* court was whether the automatic stay prevented foreclosure upon the debtor's default in payment under a confirmed chapter 13 plan. The court held the stay was not in effect. The opinion is based on the assumption that upon confirmation of a chapter 13 plan a new debt and a new lien are created. Therefore, the court concluded a foreclosure proceeding following a default after confirmation is not a proceeding to enforce a claim that arose prior to commencement of the case.

This may be true in a chapter 11 case because the order of confirmation constitutes a discharge of prepetition claims. Such is not the case in chapter 13. The debtor cannot receive a discharge under § 1328(a) until the plan has been completed and the creditors have received the distribution provided for by the plan and the order of confirmation.

Under *Nicholson,* there would be no need for a discharge under § 1328(a) after completion of the plan since there would be no remaining debts to discharge. If the property had been encumbered by more than one lien prior to commencement of the case, and *Nicholson* was correct, then all liens after confirmation would be of equal priority. A prepetition second mortgage would then have the same priority as a prepetition first mortgage.

An even more anomalous result would occur under *Nicholson* if the plan did not mention the second mortgage. Section 1327(c) applies only

in a plan constitute a modification of the creditor's rights in contravention of § 1322(b)(2). The terms of the trust deed remain unchanged as to payment of future installments. All post-confirmation defaults must be cured. What may be a reasonable time to cure a default will depend upon the circumstances in an individual case. In no event may the period of time to cure the defaults continue beyond the length of the term of the plan.

In view of the rehabilitative purpose of chapter 13, it is the court's opinion that §§ 1329, 1322(b)(2) and (5) permit the court to approve the modification of a plan to take into account post-confirmation defaults in payment to a creditor secured only by the debtor's residence. The court finds that the modified plan dated May 5, 1987 complies with the provisions of § 1322 and § 1325 and should be approved.

This memorandum opinion constitutes findings of fact and conclusions of law which will not be separately stated. Appropriate orders will be entered.