JUSTICE, District Judge,
concurring in part and dissenting in part:
I find that it was an abuse of discretion for the bankruptcy court to include a “drop dead” clause in its April 13, 1995, Order Conditionally Modifying Stays, and for this reason only, I respectfully dissent from the majority opinion.
As the majority summarizes, Josephine Mendoza’s Chapter 13 Plan of Reorganization provided for the payment of the current mortgage on her residence, the pre-petition six-month arrearage on the mortgage, and a trustee’s fee. Mendoza, as a result of an illness, was forced to miss work and was eventually dismissed from her job, causing her to miss two of her monthly payments under the Reorganization Plan. Consequently, Temple, the creditor, filed a motion for relief from stay under section 362(d)(1) of the Bankruptcy Code. The bankruptcy court thereupon ordered that Mendoza pay off the post-petition arrearage on her mortgage over a six-month period. The court included a drop-dead clause in its order, which provided that Temple, upon default by Mendoza, could foreclose on her residence after providing her notice without seeking the bankruptcy court’s approval.
When a debtor files for protection under Chapter 13 of the Bankruptcy Code, section 362(a) provides for an automatic stay of most actions against the debtor’s property. The automatic stay provision, a “key component of federal bankruptcy law,” In re S.I. Acquisition, Inc., 817 F.2d 1142, 1146 (5th Cir.1987), “is one of the fundamental debtor protections provided by the bankruptcy laws,” id. (quoting H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296). The automatic stay provision precludes any recourse to state law remedies in a Chapter 13 case until the debtor is discharged, which usually occurs when the debt- or has completed all payments under her reorganization plan. See 11 U.S.C.A. *1271 §§ 362(a), (c)(2). By allowing a creditor to foreclose on the debtor’s property without permission from the court, a “drop-dead” clause constitutes a modification and conditioning of a stay.
While the inclusion of a drop-dead clause is permitted under the Bankruptcy Code, as a modification of an automatic stay, the following conditions must first be established:
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization____
11 U.S.C.A.- § 362(d). Subsection two, which requires that the debtor lack equity in her property, is inapplicable to the ease at hand, because Mendoza has equity in her residence. Therefore, the bankruptcy court’s decision to include a drop dead clause should be analyzed for abuse of discretion pursuant to the “for cause” exception in § 362(d)(1).
The Bankruptcy Act does not specify what constitutes cause to modify a stay, other than “lack of adequate protection of an interest in property of such party in interest.” The legislative history, however, provides some guidance:
The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause____ [A] desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another’s estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request mil determine whether relief is appropriate under the circumstances.
H.R.Rep. No. 95-595, at 343 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6300 (emphasis added). The vast majority of courts that have construed the “for cause” provision of section 362(d) have found that a debtor’s failure to make payments to the creditor, in violation of her reorganization plan, can constitute cause to modify a stay. Yet, failure to make post-petition payments does not ipso facto establish cause for relief. In re Raymond, 99 B.R. 819, 822 (Bankr.S.D.Ohio 1989). Rather, in accordance with the legislative history, before modifying a stay, a court should first weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default. In re McCollum, 76 B.R. 797, 799 (Bankr.D.Or.1987) (“A postpetition default may, or may not, constitute ‘cause’ for relief from stay.”); In re Davis, 11 B.R. 680, 681 (Bankr.E.D.Pa.1981) (“[Wjhere debtors’ delay in beginning [plan] payments is excusable, that failure alone is not sufficient ‘cause’ for lifting the stay.”).
The following factors are relevant in Mendoza’s case in determining whether her failure to make payments constitutes cause: (1) the amount of post-arrearage debt, (2) the number of payments missed,[1] (3) the reason *1272 for the default, (4) whether adequate protection exists to cover the missed payments,[2] and (5) the type of property subject to the modification of the stay. Together, these factors support the finding that there was no cause to modify the automatic stay protecting Mendoza’s residence.
Mendoza’s post-arrearage debt was minimal. Her total debt owed to Temple was $3,276.94. As a result of missing two monthly payments, her post-arrearage debt was $684. She missed her payments for only two months, not out of neglect or bad faith, but because she was sick and because, as a result, was terminated from her employment. Her sickness and termination from employment was not something she could predict at the time she entered into her plan of reorganization. Further, more than adequate protection existed to cover her debts. “[I]n determining whether a secured creditor’s interest is adequately protected, most courts engage in an analysis of the property’s ‘equity cushion’ — the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims.” In re Indian Palms Assoc., Ltd., 61 F.3d 197, 207 (3rd Cir.1995). Mendoza’s equity in the property — more than $40,000 — is substantial, and Mendoza’s equity cushion was in excess of one thousand percent. “Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection.” In re Kost, 102 B.R. 829, 831 (Bankr.D.Wyo.1989) (citations omitted).[3] Finally, the fact that it is Mendoza’s residence that is the subject of the drop dead provision weighs in her favor.
Balancing the equities through application of the above factors, I find that the imposition of a drop-dead clause is too harsh a remedy given the specific circumstances of Mendoza’s case. Mendoza, through no will of her own, was placed in a hard situation at a hard time. The payments missed were slight, and creditor Temple remained adequately protected. The majority appears to be heading in the direction of creating a per se rule that whenever there is a post-petition default, the bankruptcy court may impose a drop dead requirement on the debtor. The protections provided by the automatic stay provision of section 362 should not be so readily eviscerated. Consequently, I find that the bankruptcy court abused its discretion in deciding that it had cause to include a drop dead clause in its Order Conditionally Modifying Stays.

. Most courts require a “substantial default in performance" of the terms of a plan before finding cause to lift or modify a stay, examining both the amount of the post-arrearage debt and the number of payments missed. See, e.g., In re Smith, 104 B.R. 695, 700 (Bankr.E.D.Pa.1989) (“The only real issue before the court in a post-confirmation motion for relief from the automatic stay is whether the debtor has substantially complied with the terms of the confirmed plans.") (citing to numerous cases on this issue); In re Durben, 70 B.R. 14, 16 (Bankr.S.D.Ohio 1986) (stay not lifted because no material default); In re Graves, 59 B.R. 928, 929 (Bankr.E.D.Pa.1986) (cause existed where the debtor completely failed to make payments over a period of three years); In re Shahid, 27 B.R. 673, 674-75 (Bankr.S.D.Ohio 1982) (cause existéd *1272 where debtor accumulated "formidable” arrear-age by failing to make any post-confirmation payments); In re Davis, 11 B.R. 680, 682 (Bankr.E.D.Pa.1981) (refusing to lift stay given short period of time during which payments were skipped).

. In re Morysville Body Works, Inc., 86 B.R. 51, 57 (Bankr.E.D.Pa.1988) (size of equitable cushion is one factor a court must weigh); In re McCollum, 76 B.R. 797, 799 (Bankr.D.Or.1987) ("[W]hen a creditor is adequately protected by a large equity cushion and the debtor could suffer a substantial loss in the event of foreclosure, it does not appear that relief from stay should automatically follow a default in payment.").

. While the amount of equity in the property is the primary factor that courts look to in an adequate protection analysis, other factors include the following: the value of the collateral, which was considerable in this case, the likelihood that the collateral will depreciate or appreciate over time, whether insurance coverage is inadequate, whether property taxes are being paid, and the prospects for successful reorganization of the debtor's affairs. See, e.g., In re Briggs Transp. Co., 780 F.2d 1339, 1349 (8th Cir.1985); In re Aqua Assoc., 123 B.R. 192, 196-97 (Bankr.E.D.Pa.1991). Given the incomplete state of the record regarding the latter four of these factors, they have not been considered in this analysis.