In re Timothy John LITTKE, Debtor.

Timothy John LITTKE, Plaintiff,

v.

TRUSTCORP MORTGAGE COMPANY, Defendant.

Bankruptcy No. 86–11246.
Proc. No. 89–1012.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

July 14, 1989.

Fred Wehrwein, Fort Wayne, Ind., for plaintiff.

Wesley N. Steury, Fort Wayne, Ind., for defendant.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court following trial of the issues raised by Debtor's application for finding of contempt. The application is essentially a complaint which seeks to remedy alleged violations of the automatic stay and to restrain further violations. Defendant, Trustcorp, is a creditor of the Debtor, holding a claim against him which is secured by a first mortgage upon Debtor's residence.

Plaintiff/Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on December 12, 1986. On May 7, 1987, the court entered an order confirming Debtor's proposed Chapter 13 plan. The plan was confirmed, without objection from any creditor or party in interest, and contemplates full payment of all claims against the Debtor.

The plan requires the Debtor to pay the Chapter 13 trustee the sum of $135.01 a month, for a period of sixty (60) months. Where Trustcorp's rights to payment are concerned, from the payments received by the Trustee, delinquent mortgage payments are to be cured. Current mortgage payments "are to be made outside the plan." These payments are slightly less than $400.00 a month and include not only the principal and interest due on the mortgage but also amounts to be escrowed for insurance and taxes.

Debtor has not been entirely successful in performing his obligations under the plan, either where the monthly payments to the Trustee are concerned or with regard to the mortgage payments outside the plan. Since confirmation, payments have been intermittent at best. Of the payments Debtor was required to make directly, the stipu-lations which the parties filed at trial reflect only four monthly mortgage payments between the date of confirmation and the end of April, 1988. Between May and November of 1988, Debtor attempted to make only two of the six required payments. Both of these payments were refused by Trustcorp and returned to the Debtor. Since the beginning of November, 1988, only two monthly payments have been made. These payments are in addition to the payments Trustcorp periodically received from the Chapter 13 Trustee. Despite this payment history, Debtor believes that he is and always has been in substantial compliance with the obligations set forth in the confirmed plan.[1]

By October of 1988, Trustcorp became sufficiently dissatisfied with Debtor's payment history that it decided to foreclose its mortgage on Debtor's residence and retained counsel in order to do so. Although the property in question is located in Allen County, Indiana, Trustcorp contacted counsel out of Indianapolis in order to commence foreclosure proceedings. Counsel was aware of the bankruptcy and the confirmed Chapter 13 plan. He knew the confirmed plan provided that the current mortgage payments to Trustcorp would be made "outside the plan." Counsel also realized there was a substantial split of authority in the reported decisions concerning the viability of the automatic stay following confirmation of a Chapter 13 plan. Nonetheless, without seeking or obtaining relief from the automatic stay, counsel proceeded to initiate a foreclosure action in the Marion Superior Court, located in Indianapolis, Indiana.

Counsel initiated the foreclosure action without seeking relief from the automatic stay because of what is apparently the prevailing practice in the Southern District of Indiana, with regard to post-confirmation defaults in payments which are being made "outside" a Chapter 13 plan. Although there do not seem to be any report-

---

1. For the purposes of this decision, the court assumes without deciding that the Debtor is in default of his obligations under the plan and is not, as he believes, in substantial compliance with it.

ed decisions on the issue, based upon inquiries counsel made of that bankruptcy bar and his unquestioned practice in the state courts, the attitude there appears to be that the automatic stay does not survive confirmation of the plan. Thus, upon default in the payments required by the plan, a lien holder may proceed to enforce its rights without seeking relief from the automatic stay.

Counsel recognized that attitudes and practices can vary between bankruptcy courts in different districts. Accordingly, he contacted members of the bankruptcy bar who practice in the Northern District of Indiana, in an effort to determine this court's position on the issue. Upon doing so, counsel learned that decisions from this district had never answered the question, of whether relief from stay was required, one way or the other. Consequently, based upon his experience in the Southern District of Indiana, counsel filed a foreclosure action without seeking or obtaining relief from the automatic stay. The action was filed on October 19, 1988.

In response to the action, Debtor's counsel filed a motion to stay the foreclosure proceedings, with the state court. Although the motion correctly identified the Debtor by name, for reasons which are not apparent, both the date of the Debtor's petition and the cause number are incorrect. Nonetheless, based upon this information, the state court initially denied Trustcorp's motion for summary judgment because of the pending bankruptcy. Counsel then filed a motion to reconsider, in which he advised the state court of the inaccuracies contained in Debtor's motion to stay. Counsel also provided the court with the correct information concerning the date of the petition and the cause number of the proceeding. Furthermore, the motion to reconsider informed the state court that a Chapter 13 plan had been confirmed. It then continued by advising it that confirmation had terminated the automatic stay.

This motion to reconsider was scheduled for a hearing on January 11, 1989. When the date of the hearing came, the state court learned that Debtor's counsel would not be appearing. Accordingly, it proceeded to grant the motion to reconsider, as well as Plaintiff's motion for summary judgment. In doing so, it entered a money judgment against the Debtor in the sum of $41,544.00, it also decreed foreclosure and the sale of the real estate securing payment of the mortgage debt.

After obtaining its judgment, Trustcorp proceeded to enforce the decree by having a praecipe for sale issued to the Sheriff of Allen County, Indiana. This adversary proceeding was initiated prior to the sale of the property and seeks, in part, to enjoin enforcement of the foreclosure decree.

The automatic stay of 11 U.S.C. § 362 arises as a matter of law upon the filing of a petition for relief under Title 11. 11 U.S.C. § 362(a). The stay is applicable to all entities and prohibits:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. 11 U.S.C. § 362(a)

The stay is not only created automatically, it may also terminate automatically.

(1) [T]he stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) [T]he stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed;

(C) if the case is a case under Chapter 7 of this title concerning an individual or a case under Chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied. 11 U.S.C. § 362(c).

■ Section 362 of the Bankruptcy Code delineates not only the scope and duration of the automatic stay but also provides a remedy for its violation.

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(h).

Violations of the stay may also be redressed through contempt proceedings. *See In re Computer Communications, Inc.*, 824 F.2d 725, 731 (9th Cir.1987); *In re Schewe*, 94 B.R. 938, 946–48 (Bankr.W.D. Mich.1989); *In re Wagner*, 74 B.R. 898, 902–03 (Bankr.E.D.Pa.1987); *In re Taco Ed's, Inc.*, 63 B.R. 913, 931 (Bankr.S.D. Ohio 1986); *In re DePoy*, 29 B.R. 471, 480 (Bankr.N.D.Ind.1983).

There is a dramatic split of authority concerning the continued viability of the automatic stay following confirmation of a Chapter 13 plan. To a large extent, this diversity of opinion arises out of the differing emphasis courts place upon § 1306 of the Bankruptcy Code, which identifies property of the Chapter 13 bankruptcy estate, and § 1327 of the Code, which identifies the effect of confirmation.

In addition to the property specified in § 541, the Chapter 13 bankruptcy estate includes:

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first. 11 U.S.C. § 1306(a)(1).

The section goes on to emphasize that the debtor shall remain in possession of all property of the estate, except as provided in a confirmed plan or order of confirmation. 11 U.S.C. § 1306(b). In discussing the effect of confirmation, § 1327 provides that "confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).

Relying on § 1327(b), one line of authority has concluded that the estate terminates upon confirmation. Thus, actions to collect amounts due creditors from the debtor are not considered to be violations of the automatic stay. With few exceptions, however, these courts have been confronted with a situation involving a post-petition creditor attempting to enforce its rights, *see In re Walker*, 84 B.R. 888 (Bankr.D.D.C.1988); *In re Dickey*, 64 B.R. 3 (Bankr.E.D.Va. 1985); *In re Mason*, 45 B.R. 498 (Bankr.D. Or.1984); *In re Johnson*, 36 B.R. 958 (Bankr.D.Utah 1983), the collection of non-dischargeable child support and alimony not addressed by the confirmed plan, *see In re Adams*, 12 B.R. 540 (Bankr.D.Utah 1981), or the collection of a non-dischargeable debt for alimony, *see Matter of Bernstein*, 20 B.R. 595 (Bankr.M.D.Fla.1982). Based upon the equities in favor of creditors in these circumstances, other courts, while recognizing the continued viability of the stay following confirmation, have modified it to permit the enforcement of their claims. *See In re Osei*, 90 B.R. 910 (Bankr. N.D.Ill.1988); *In re Clark*, 71 B.R. 747 (Bankr.E.D.Pa.1987).

The competing line of authority relies upon the expansive scope of § 1306, which operates until dismissal, conversion, or closing, and/or the policies behind Chapter 13 to conclude that neither the estate nor the stay cease to exist upon confirmation. Instead, the stay remains in effect for the duration of the confirmed plan. *See In re Broman*, 82 B.R. 581 (Bankr.D.Colo.1988); *In re Aneiro*, 72 B.R. 424 (Bankr.S.D.Cal. 1987); *In re Root*, 61 B.R. 984 (Bankr.D.

Colo.1986); *Matter of Willey*, 24 B.R. 369 (Bankr.E.D.Mich.1982). Consequently, creditors who take actions prohibited by § 362(a) do so at their peril. *See In re Hartley*, 75 B.R. ?94 (D.S.D.Ala.1987); *In re Rodriguez*, 97 B.R. 136 (Bankr.D.P.R. 1988); *In re Stucka*, 77 B.R. 777 (Bankr.C. D.Cal.1987); *In re Hebert*, 61 B.R. 44 (Bankr.W.D.La.1986).

Trustcorp defends against Plaintiff/Debtor's claims by arguing that the automatic stay terminated upon confirmation. Relying on those decisions which give precedence to § 1327, it argues that confirmation terminated the bankruptcy estate by vesting it in the Debtor. Therefore, through the operation of § 362(c)(1), confirmation also served to terminate the stay.

■ Although this court is inclined towards those decisions which hold that the Chapter 13 estate continues to exist following confirmation, we need not answer the question at the present time. A ruling on this issue cannot help Trustcorp. The prohibitions against actions as to property of the estate are only one facet of the automatic stay. It also prohibits any entity from attempting to enforce a pre-petition claim against the debtor or debtor's property. 11 U.S.C. § 362(a)(1), (5) & (6). The vitality of these aspects of the automatic stay is unaffected by whether or not property is part of the bankruptcy estate. They remain fully operative until the Debtor's discharge is granted or denied or until the case is closed or dismissed. 11 U.S.C. § 362(c)(2).

Termination of the estate's interest in property is not the equivalent of a wholesale termination of the automatic stay. Even though a creditor's collateral may no longer be property of the estate, without an order terminating the stay, it is still prohibited from enforcing its lien against that property until one of the conditions of § 362(c)(2) has been fulfilled. *In re Motley*, 10 B.R. 141, 144–45 (Bankr.M.D.Ga. 1981); *In re Cruseturner*, 8 B.R. 581, 592 (Bankr.D.Utah 1981). *See also Matter of Shields*, 24 B.R. 219 (Bankr.S.D.Ohio 1982); *Matter of Estes*, 15 B.R. 25 (Bankr.S.D.

Ohio 1981); *In re Bennett*, 13 B.R. 643 (Bankr.W.D.Mich.1981); *In re Coronado*, 11 B.R. 8 (Bankr.D.Ariz.1981). Thus, even if confirmation served to terminate the bankruptcy estate, by vesting it in the debtor, "the automatic stay ... relative to actions against the debtors' property remained in full force and effect." *In re Hartley, supra*, 75 B.R. at 397–98. It also continued as to actions against the debtor on account of pre-petition claims. *See In re Broman, supra*, 82 B.R. at 582.

"Good sense and the intent of Chapter 13 dictate that the debtor should be protected by the stay during the full course of the rehabilitation process." *Matter of Willey, supra*, 24 B.R. at 373. "[T]he automatic stay allows a debtor the time to propose, confirm, and *consummate* a confirmed plan...." *Matter of Schewe, supra*, 94 B.R. at 945 (emphasis original). It does not terminate upon confirmation of a Chapter 13 plan. At least, or perhaps more properly especially, as to pre-petition creditors, the stay continues in full force and effect throughout the entire course of the Chapter 13. *In re Hebert, supra*, 61 B.R. at 46. Consequently, a prepetition creditor may not unilaterally determine that a debtor has defaulted in the performance of a confirmed plan and proceed to enforce its debt as though no bankruptcy had ever been filed. Unless ordered by the court, the stay does not terminate until the case is closed or dismissed or the debtor's discharge is granted or denied, as contemplated by § 362(c)(2). *See In re Rodriguez, supra*, 97 B.R. at 138.

■ By initiating its foreclosure action and prosecuting that action to a conclusion, Trustcorp has violated the automatic stay. 11 U.S.C. § 362(a)(1). It has attempted to collect or recover a claim against the Debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(6). Furthermore, depending upon the effect of confirmation, it has attempted to either enforce a lien against property of the Debtor, which secured a claim that arose prior to the commencement of the case, or enforce a lien against property of the estate and ex-

ercise control over property of the estate. 11 U.S.C. § 362(a)(3–5).

■ Having determined that Trustcorp has violated the automatic stay does not end the court's inquiries, we must also determine whether or not the violation was willful, as contemplated by § 362(h), and the appropriate remedy for this misconduct.

Not every violation of the automatic stay is willful. To establish a willful violation, plaintiff must demonstrate that the defendant acted with a certain degree of deliberateness. Nonetheless, a specific intent to violate the stay is not required. *In re Wagner, supra,* 74 B.R. at 903. Willful relates to the nature of the conduct constituting the violation, not to any intent concerning the stay itself. Thus, an erroneous, although good faith, belief concerning the stay will not insulate a party from answering for the consequences of its actions. *In re Gray,* 97 B.R. 930, 936 (Bankr. N.D.Ill.1989); *In re Heafitz,* 85 B.R. 274, 282 (Bankr.S.D.N.Y.1988); *In re A.M. International, Inc.,* 46 B.R. 566, 577 (Bankr. M.D.Tenn.1985); *Matter of DePoy, supra,* 29 B.R. at 476.

"Willful," as used in § 362(h), means intentional or deliberate. *In re Mewes,* 58 B.R. 124, 128 (Bankr.D.S.D.1986); *In re Bragg,* 56 B.R. 46, 49 (Bankr.S.D.Ala.1985); *In re Tel-A-Communications Consultants, Inc.,* 50 B.R. 250, 254 (Bankr.D. Conn.1985). Knowledge that a party has filed bankruptcy gives rise to a duty of further inquiry, concerning the nature of the proceedings and their consequences. *In re Wagner, supra,* 74 B.R. at 904. *See also Matter of DePoy, supra,* 29 B.R. at 476; *In re Reed,* 11 B.R. 258, 280 (Bankr.D. Utah 1981). Any inquiry will inevitably lead to the discovery of the broad automatic stay. Consequently, knowledge of the bankruptcy is the equivalent of knowledge of the stay. *In re Wagner, supra,* 74 B.R. at 904. *See also In re Reed, supra,* 11 B.R. at 275. Thus, a deliberate or intentional act done with knowledge of the bankruptcy, which violates the automatic stay, constitutes a willful violation. *Budget Service Co. v. Better Homes of Virginia,* 804 F.2d 289, 293 (4th Cir.1986); *In re Shafer,* 63 B.R. 194, 198 (Bankr.D.Kan.1986); *In re Bragg, supra,* 56 B.R. at 48.

Measured against this standard, Trustcorp's actions constitute a willful violation of the automatic stay. It acted deliberately and intentionally when it initiated proceedings to foreclose its mortgage upon the Debtor's residence. At all times relevant to this decision it was fully cognizant of Debtor's pending Chapter 13.

Once a creditor has knowledge of the bankruptcy, the burden falls upon it "to discover the parameters of permissible action against the debtor." *In re Reed, supra,* 11 B.R. at 274. "Where there is uncertainty regarding the appropriate action with respect to a debt, the creditor should seek an adjudication in the bankruptcy court." *In re Gray, supra,* 97 B.R. at 936. *See also In re A.M. International, Inc., supra,* 46 B.R. at 577. "To hold otherwise may 'give tremendous impetus to a program of experimentation with disobedience of the law' or 'prevent accountability for persistent contumacy.'" *In re Reed, supra,* 11 B.R. at 275–76 (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 192, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949)). "Judicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay." *In re Computer Communications, Inc., supra,* 824 F.2d at 731. Accordingly, a creditor who unilaterally attempts to make a determination concerning the scope of the automatic stay takes a calculated risk, under threat of contempt or sanctions, that its judgment is correct. *In re Gray, supra,* 97 B.R. at 936. *See also In re Wagner, supra,* 74 B.R. at 904; *Matter of DePoy, supra,* 29 B.R. at 476.

Any creditor which takes action against a debtor or its property with knowledge that bankruptcy has been filed acts at its peril. Once the debtor raises the automatic stay as a shield to protect itself from these acts, the creditor who persists, without seeking approval of the bankruptcy court, takes an even more perilous course of action. Granted, in this instance, neither Trustcorp nor its counsel could say, with absolute

certainty, that the automatic stay did or did not exist. They were, however, keenly aware of the very real possibility that the stay remained in full force and effect. Rather than taking the prudent and proper course of action, by seeking a determination from this court that the stay no longer existed or terminating it, Trustcorp elected to proceed in the most expeditious manner possible, by filing suit directly in state court. It appears to have made a conscious decision to accept the risks and potential consequences that, if its actions were challenged, the bankruptcy court may or may not rule in its favor.

Even when the Debtor successfully raised the automatic stay as a defense to the state court action, rather than seeking the assistance of this court, Trustcorp, instead, chose to persuade the state court that the automatic stay no longer existed. The fact that Debtor and his counsel may have elected not to attend or participate in the state court hearing on this issue is irrelevant. One of the virtues of the automatic stay is that it is automatic and pervasive. Where it exists, a debtor is entitled to rely upon it and is not required to continually and repeatedly appear in other courts to claim its protection. Instead, the burden falls upon the creditor to come into this court and seek relief. *See Matter of DePoy, supra,* 29 B.R. at 476. Trustcorp did not do so. It elected to continue proceedings in the state court, knowing there was no unanimity of opinion concerning the propriety of its action. That Trustcorp may have reached this decision based upon the advice of counsel is no defense.[2] *In re Taco Ed's, Inc., supra,* 63 B.R. at 931; *In re Promower, Inc.,* 56 B.R. 619, 621 (Bankr.D.Md.1986); *In re Farmers Markets, Inc.,* 36 B.R. 829, 833 (Bankr.E.D.Cal. 1984); *Matter of DePoy, supra,* 29 B.R. at 476.

The automatic stay is fundamental to the proper operation of the bankruptcy laws. Its violation "strikes at the heart of the Bankruptcy Code's mechanisms for debtor rehabilitation and for equity amongst creditors; [a] willful violation is an extremely serious matter to be dealt with severely." *In re Cafe Partners/Washington 1983,* 81 B.R. 175, 182 (Bankr.D.D.C.1988). As a sophisticated lending institution, Trustcorp and its attorneys are quite familiar with the broad scope of the automatic stay and knew full well the risk of crossing the forbidden line. Yet, they made no effort to seek any clarification or guidance from this court. *See In re Heafitz, supra,* 85 B.R. at 282. Accordingly, where, as here, the aim is remedial and not punitive, there can be no complaint that the burden of any uncertainty concerning the stay is on its shoulders. *In re Reed, supra,* 11 B.R. at 276 (citing *McComb v. Jacksonville Paper Co., supra,* 336 U.S. at 193, 69 S.Ct. at 500).

The remedy for a violation of the automatic stay should include all awards necessary to restore the debtor to the status quo, including the award of attorney fees, if appropriate, based on the facts of the case. *See Matter of National Marine Sales and Leasing, Inc.,* 79 B.R. 442, 448 (Bankr.W.D.Mo.1987); *Matter of Caw,* 16 B.R. 631, 633–34 (Bankr.W.D.Mo.1981); *In re Brooks,* 12 B.R. 283, 285–86 (Bankr.W.D.Mo.1981). It is this court's conclusion that Trustcorp has willfully violated the automatic stay. Debtor is, thus, entitled to recover all of the attorney fees it has incurred as a result of the state court action, which include the fees and expenses associated with this adversary proceeding. This award is especially appropriate since Trustcorp's persistency compelled the Debtor to resort to legal action to enforce his rights. *See Matter of Davis,* 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987); *In re Shriver,* 46 B.R. 626, 631 (Bankr.N.D.Ohio 1985).

In order to fashion an appropriate remedy for this violation of the automatic stay, we should, insofar as possible, attempt to restore the status quo as it existed before Trustcorp initiated proceedings to foreclose its mortgage. This requires us to insure that Trustcorp receives no bene-

---

**2.** The advice of counsel is, however, relevant to the issue of punitive damages and in mitigation of any sanction.

fits, of any kind, as a result of its prohibited actions and that Debtor suffers no harm because of them. As a result, all proceedings in the Marion Superior Court concerning the foreclosure should be declared void, as having been conducted in violation of the automatic stay, and Trustcorp should be permanently enjoined from any and all action to enforce the judgment and decree of foreclosure. Further, Trustcorp should also be enjoined from attempting to collect or recover from the Debtor, the bankruptcy estate, or the Debtor's property any of the attorney fees and expenses it may have incurred in connection with the state court action and this adversary proceeding. Additionally, Debtor should also recover from Trustcorp the reasonable attorney fees and expenses it has incurred in connection with both the state court action and this adversary proceeding.

The court did not receive evidence concerning Plaintiff/Debtor's attorney fees and expenses at the trial in this matter, as it elected to defer the reception of that evidence until such time as it had determined the right to recover them. Accordingly, Debtor's counsel shall, within fifteen days of this date, file an affidavit specifically itemizing the attorney fees and expenses incurred in connection with the state court action and this proceeding, serving a copy thereof upon Trustcorp's counsel. Trustcorp shall have fifteen (15) days thereafter within which time to object to the fees sought or request a hearing thereon. In the absence of a timely objection or request for hearing, the court will determine the amount of fees based upon counsel's affidavit and the record in this proceeding.

In view of the fact that Trustcorp acted upon the advice of counsel, the existing split of authority on the ·issue presented, and that no reported decision out of the Northern District of Indiana or the Seventh Circuit has resolved the issue before the court, an award of punitive damages is not appropriate at this time.

An appropriate order will be entered concerning the procedure with regard to establishing the amount of Plaintiff's/Debtor's attorney fees. The entry of final judgment will be deferred until such time as the court has determined the attorney fees and costs which Plaintiff/Debtor may recover.